UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:26-cr- 159-JEP-MCR
18 U.S.C. § 371

RASHAN JAMMEELAH JONES

## INFORMATION

The United States Attorney charges:

## COUNT ONE

### A.  Introduction

At all times material to this Information:

1.     Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2.     Medicaid was a health care program funded by both the federal government and the State of Florida that provided medical coverage for certain low-income individuals.

3.     Medicare and Medicaid were each a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

4.     Medicare and Medicaid were each a "health care benefit program" as defined in 18 U.S.C. § 24(b).

5.     Medicare was divided into four parts: A, B, C, and D.  Part D provided supplementary medical insurance benefits that covered the cost of many prescription drugs, but Medicare paid for such a drug only if it was prescribed for a medically accepted indication that facilitated the diagnosis or treatment of illness or injury or the improvement of the functioning of a malformed body member.

6.     First Coast Community Development, Inc. ("FCCD"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.  FCCD was licensed as a pharmacy by the State of Florida.

7.     The defendant, RASHAN JAMMEELAH JONES, was an Advanced Practice Registered Nurse.

## B. Charge

Beginning in or about November 2023 and continuing through in or about July 2025, in the Middle District of Florida, and elsewhere, the defendant,

RASHAN JAMMEELAH JONES,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully solicit and receive remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made

2

in whole and in part under a health care benefit program, that is, Medicare and Medicaid, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

## C.    **Manner and Means**

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1.    In or about November 2023, FCCD and a marketing company entered into an agreement for the company to market HIV post-exposure prophylactic medications that would be supplied by FCCD.

2.    The agreement provided that FCCD would pay the marketing company $200 for every person who was referred to FCCD for the provision of HIV medications but that FCCD would pay this amount only if a claim submitted on behalf of the person was paid by Medicare or Medicaid.

3.    Marketing representatives set up tents and tables in Jacksonville, generally in low-income areas, and offered to provide free, government-sponsored cell phones to anyone who stopped and agreed to provide their information.

4.    As a result of the agreement with FCCD, while obtaining the personal information necessary for the person to receive the free cell phone, the marketers also obtained health insurance information, including whether the person was covered by Medicare or Medicaid.

5.     The marketing company paid its marketers a set amount, usually $50, for every person who was referred to FCCD for HIV medications, but it paid this amount only if the claim for that person was paid by Medicare or Medicaid.

6.     The information gathered by the marketers was sent to FCCD, which used the information to generate prescriptions for HIV medications.

7.     The prescriptions were issued by the defendant in her capacity as an Advance Practice Registered Nurse.

8.     The defendant had never seen, spoken with, or performed any manner of evaluation, examination, or test on the persons for whom she issued the prescriptions.

9.     FCCD filled the prescriptions, submitted claims to Medicare or Medicaid for the medications, and was reimbursed approximately $4,000 per month for each person for whom a claim was paid.

10.    The persons who were signed up by the marketers believed that they were agreeing only to receive a free cell phone and did not request or agree to receive HIV medications.

11.    For the period of November 2023 through July 2025, the actions of the conspirators caused the submission of approximately 20,316 fraudulent claims, resulting in reimbursements from Medicare totaling approximately $11,681,479 and reimbursements from Medicaid totaling approximately $12,536,267. Accordingly, the total loss to these programs was approximately $24,217,746.

12.     The defendant received a total of approximately $422,250 as a result of her participation in the offense.

### D.     Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1.     In or about November 2023, a marketing company entered into an agreement with FCCD to market HIV prophylactic medications that would be provided by FCCD.

2.     In or about February 2024, a marketer referred Person 1 to FCCD for the provision of HIV medications.

3.     The defendant issued prescriptions for the HIV medications for Person 1 covering the period of February 2024 through December 2024.

4.     During the period of February 2024 through December 2024, FCCD submitted eleven claims to Medicare for medications prescribed to Person 1, resulting in payments to FCCD totaling approximately $21,013.

5.     In or about March 2025, a marketer referred Person 2 to FCCD for the provision of HIV medications.

6.     In or about March 2025, the defendant issued prescriptions for the HIV medications for Person 1.

7.      On or about March 10, 2025, FCCD submitted three claims to Medicare for medications prescribed to Person 2, resulting in payments to FCCD totaling approximately $4,312.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.      The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2.      Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(1), in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture for at least approximately $422,250, which represents the proceeds the defendant obtained as a result of the offense.

4.      If any of the property described above, as a result of any act or omission of a defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

e.  has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

GREGORY W. KEHOE
United States Attorney

By:  _____

ARNOLD B. CORSMEIER
Assistant United States Attorney

By:  _____

For KARA WICK
Assistant United States Attorney
Chief, Health Care Fraud Section